Argued July 7, affirmed September 3, 1976

# STATE OF OREGON, *Respondent,*
*v.*
# RICHARD WESLEY ELLIOTT, *Petitioner.*

553 P2d 1058

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed briefs for petitioner.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Donald L. Paillette, Assistant Attorney General, Salem.

(For Court of Appeals opinion, see 24 Or App 471)

HOLMAN, J.

## HOLMAN, J.

Defendant appeals from his conviction after a jury trial of the illegal sale of amphetamine, a dangerous drug. The conviction was affirmed by an opinion of the Court of Appeals. 24 Or App 471, 546 P2d 766 (1976). We allowed review because the reasons given in the opinion did not appear to be adequate to justify the result.

One Lewis was a paid narcotics informant for the State. He arranged the sale of amphetamine by defendant to Gard, an undercover officer, and was present when the sale was consummated. During the pendency of the case, defendant filed a motion to require the State to produce Lewis as a defense witness, representing that Lewis's testimony would be relevant to show entrapment. The motion was supported by an affidavit of defendant's attorney which included the statement that

> "Mr. Lewis's continued prodding of Mr. Elliott to obtain drugs for him resulted in Mr. Elliott engaging in conduct that he would not otherwise have done and that his conduct is a direct result of police conduct."

As a result of the hearing, the trial judge ordered

> "The State [to] aid and assist defendant by furnishing defendant with all information within their control as to the present whereabouts of the said Leroy Lewis."

At the commencement of the trial, defendant orally moved that "the case be dismissed * * * on the grounds that they [the State] failed to produce a material witness at the time of trial," and not on the ground that the State had failed to assist him in locating Lewis. The trial court denied the motion and the trial proceeded. It is the denial of this motion which forms the basis for the petition for review. Defendant contends he has been deprived of his right under the Sixth Amendment to the Constitution of the United States[1] to confront witnes-

---

[1] "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and * * *."

ses against him and to have compulsory process for obtaining witnesses in his favor. We shall not consider the claim of lack of confrontation since Lewis was not used as a witness against defendant.[2]

■ The State asserts it sent Lewis out of the state to remove him from the danger of being killed as the result of his having been involved in other narcotic cases and that it had the privilege of not producing him. The issue is whether the privilege was extended to the State under the then present circumstances. The privilege involved is that of the government's to protect persons who furnish information of violations of the law to officers charged with the enforcement of that law. The purpose of the privilege is the furtherance and protection of the public's interest in effective law enforcement. The flow of information is dependent upon the protection of those who inform. *Roviaro v. United States,* 353 US 53, 59, 77 S Ct 623, 1 L Ed 2d 639 (1957). Known and available informants are not known for their longevity.

■ No fixed rule with respect to production is justifiable. The problem is one which calls for a balancing of the public's interest in protecting the flow of information against the individual's right to make his defense. Whether a proper balance renders as error the failure to require production depends upon the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors. Where production of the informant has been shown to be essential to a fair determination of a defendant's guilt or innocence, the privilege must give way. *Roviaro v. United States, supra* at 60-62; *State v. Cortman,* 251 Or 566, 574, 446 P2d 681 (1968).

■■ Defendant made no showing of facts upon which to base his claim of entrapment, although, as the person allegedly enticed, he necessarily had personal know-

---

[2] *United States ex rel Meadows v. State of New York,* 426 F2d 1176, 1184 (2d Cir 1969), *cert. denied,* 401 US 941, 91 S Ct 944, 28 L Ed 2d 222 (1971).

ledge of the facts. His lawyer, not having personal knowledge, attempted to fill the void, but this was an insufficient basis upon which to request dismissal of the charge. Defendant could personally have made as a preliminary matter, by affidavit or testimony, a prima facie showing of facts sufficient to support his defense. *Cf. State v. Wright,* 266 Or 163, 167-68, 511 P2d 1223 (1973). If, in such a situation, all it would take to secure a dismissal is a failure by the State to honor a request to produce an informant as a witness, a defendant could then be expected to make such a request in every case in the hope that the State would not take the chance of producing the informant.[3]

Defendant was not demanding the informant's presence as a material witness to those facts which were the subject of proof at defendant's trial. He claimed he wanted to establish a defense about which, in fact, there was no testimony in his trial. Despite his knowlege of the facts of the alleged entrapment and the State's inability to refute testimony relating thereto in Lewis's absence, defendant chose not to testify in his defense. Without defendant's testimony that he would not have arranged the sale of narcotics but for the suborning of Lewis, the defense of entrapment is completely impracticable. The following colloquy occurred between the court and defendant's counsel:

"THE COURT: What makes you think Mr. Lewis would testify to the truth and what makes you think he'd testify for you?

"MR. JAMES: If he were subpoenaed, Your Honor, I don't know what he's going to say obviously, but I think you're in a different situation here than you are in a case like Courtman [sic] where they're going to ask the witness to testify to the fact that he had produced the evidence, had planted it there merely to get an arrest. This case is different in that we're contending that Mr. Elliott was

---

[3]Testimony by affidavit or otherwise given to afford standing to assert Sixth Amendment rights cannot subsequently be used against defendant at trial in derogation of his Fifth Amendment rights. For a similar holding in connection with the assertion of Fourth Amendment rights, *see Simmons v. United States,* 390 US 377, 389-94, 88 S Ct 987, 19 L Ed 2d 1247 (1968), and *State v. Wright,* 266 Or 163, 168 n. 2, 511 P2d 1223 (1973).

entrapped and all Mr. Lewis would have to do is testify to the factual proceedings prior to the time the buy was made. If he does testify to the fact that he had made numerous attempts to get this purchase going I think that would substantially aid Mr. Elliott's defense.

"THE COURT: Mr. Elliott can testify to that. I assume Mr. Garr [sic] or some other police officer can testify to that.

"MR. JAMES: Well, I don't know whether Officer Garr [sic] can, but Mr. Elliott can. But look at the situation it puts me in as far as the credibility of Mr. Elliott. He has a substantial criminal record and is going to be destroyed before the jury because of all that going to come in. He's the only witness there.

"THE COURT: You think it's realistic to put on entrapment defense without having the defendant take the stand in any case?

"MR. JAMES: No, I don't. I plan to call him.

"THE COURT: So even if Mr. Lewis is here the defendant would take the stand?

"MR. JAMES: Yes."

It is our conclusion that when, as here, the facts concerning the claimed defense are all within the knowledge of the defendant but he nevertheless is unwilling or unable both before and during trial to make a showing of entrapment, an insufficient likelihood exists that such a defense could be established to outweigh the State's privilege not to produce an informant. This is not a situation as in *Velarde-Villarreal v. United States,* 354 F2d 9 (9th Cir 1965), upon which defendant relies, where the defendant took the stand at his trial and testified at length relative to his entrapment. The following statement in *State v. Cortman,* 251 Or 566, 575, 446 P2d 681 (1968), is relevant here:

"We hold that in order to predicate error upon the refusal of a court to order the state to produce (and thereby to end the usefulness of) an informer, the party seeking such an order should make some preliminary showing that the informer's testimony would have some bearing upon the issue of guilt or innocence. *See People v. Durazo,* 52 Cal 2d 354, 340 P2d 594, 76 ALR2d 257 (1959).

[ 104 ]

The argument that the informer in the case at bar may have 'planted' the narcotics is an argument the defendant is free to make before the jury, whether or not the informer takes the witness stand. The likelihood that an informer would take the stand and admit that he 'planted' the state's evidence in order 'to frame' the defendant is not, however, so great that we can say that the state had the duty to sacrifice the informer in this case. It must be remembered that in this case the issue was possession, and the state was able to put on its entire case without reference to the informer. *See State v. Penney,* 242 Or 470, 410 P2d 226 (1966). Without some preliminary showing that the defendant's argument is based on more than imagination, the proposition does not provide a reason for requiring the state to disclose the informer's identity."

The judgment of conviction is affirmed.