Charles Edward BURTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 1183S399.

Supreme Court of Indiana.

April 24, 1984.

Ralph Ogden, Norton, Frickey & Associates, Denver, Colo., for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Charles Edward Burton was convicted in the Marion County Municipal Court of class D felony automobile theft and was sentenced to two years imprisonment. Present counsel helped to represent Appellant at trial but a different attorney presented his appeal to the Second District Court of Appeals. Appellant's conviction was affirmed by the Court of Appeals. Present counsel thereupon interceded to represent Appellant in petitioning this Court to grant transfer. He alleged, *inter alia*, that appellate counsel had so poorly prepared and presented Appellant's appeal before the Court of Appeals that Appellant suffered ineffective assistance of counsel. After reviewing the record, this Court agreed and accordingly vacated the opinion of the Second District Court of Appeals and granted transfer. *Burton v. State*, (1983) Ind., 455 N.E.2d 938. The cause was ordered rebriefed by all of the parties and we now consider the issues presented by the rebriefing.

The primary question now presented is whether Appellant was denied a fair trial when the trial court allowed the State to put into evidence the confidential identification number from the allegedly stolen vehicle without permitting Appellant to inspect said confidential number. Appellant further claims that because the evidence regarding the confidential number lacks any probative value, there was insufficient evidence to prove him guilty of theft beyond a reasonable doubt. Appellant lastly claims that the charging information was so vague in describing the particular crime for which he was charged that his Motion to Dismiss should have been granted. We do

not reach Appellant's last issue due to our disposition of Appellant's cause on the primary issue.

The facts adduced during trial indicate that on July 24, 1979, Earl Quinn reported to the Kokomo Police Department that his 1976 blue and white Ford truck had been stolen from his place of employment. On or about August 15, 1979, Paul Holt purchased what he believed to be a 1974 Ford truck from Appellant. At the time of the sale, Appellant did not have a title certificate to the truck but assured Holt that he would obtain one within a few days. Holt subsequently received from Appellant a title certificate for a 1974 Ford truck. On April 17, 1981, Officer William White of the Indianapolis Police Department noticed the blue and white Ford truck parked at Paul Holt's residence and inspected it. After his brief examination, Officer White determined that the plate bearing said vehicle's visible identification number had been altered since the plate was not firmly against the door where it was located and the rivets used to affix it were not the type of rivets used by the Ford Motor Company in its manufacturing process. Officer White thereupon obtained the visible and confidential identification numbers from the truck. He discovered that the visible identification number revealed that the truck was a 1974 Ford, was not reported as stolen and was registered to Paul Holt. The confidential number, however, revealed that the truck actually was a 1976 Ford, was registered to Earl Quinn and was the truck reported stolen in 1979. Vehicles contain a confidential vehicle identification number (VIN) that is placed in a secret location on the vehicle by its manufacturer. Although there apparently is some correlation between a vehicle's visible number and its confidential number, the confidential number is different from the visible number. The confidential number is known only to the manufacturer and to persons legitimately concerned with the identification of vehicles for insurance and law enforcement purposes.

The information charging Appellant with theft, omitting captions, read as follows:

"... On or about August 15, 1979 in Marion County, State of Indiana Charles Burton (alias) Marvin Burton, did unlawfully and knowingly exert unauthorized control over the property of Earl Quinn, Jr. to wit: Blue & White 1976 Ford Pick Up VIN # F15MCC58130 with intent to deprive Earl Quinn Jr. of any part of the value or use of said property...."

The VIN alleged in the information, F15MCC58130, was the confidential number that Officer White observed and testified about. Appellant was never permitted to inspect the vehicle in such a way as to verify that said number did in fact appear on the truck in a secret place designated by the manufacturer. Appellant argues that since the confidential identification number was the only evidence used to prove ownership of the allegedly stolen truck, it was improper to not allow him an opportunity to inspect the truck for said number and it was improper to put into evidence any testimony regarding the number. We agree.

■ There were two witnesses who testified regarding the identification of this vehicle; therefore, probative evidence sufficient to convict Appellant beyond a reasonable doubt of the theft of this vehicle must be found within their testimonies. The first of the two witnesses was Earl Quinn, Jr. He had not seen his truck since the day he drove it to work in July, 1979, and later found it missing. Although the Indianapolis Police Department had custody of the vehicle from the time it was discovered by Officer White in April, 1981, until as late as June, 1981, Quinn never inspected it during that period. The State gave no explanation to indicate whether Quinn declined to inspect the truck or never was invited to do so. What we have is Quinn's testimony on cross-examination which was as follows:

"Q. When you reviewed State's Exhibits, 5, 6, 7 and 8 [photographs], can you say with actual certainty that those are pictures of what was your truck, in 1979?

A. I would say it was a truck like I had.

Q. It was like you had but you can't say with actual certainty that this was the same truck that you had in the summer of 1979, is that correct?

A. I would assume they made several trucks that color.

Q. You can't say whether or not this is another truck that had a similar appearance to yours, is that true?

A. I would say that it looked like my truck.

Q. It looks like it?

A. Yes mam.

Q. But, you're not positive that this is your truck?

A. I don't think I could be positive on something like that. I cannot completely—

Q. Have you ever gone out and inspected the vehicle that is in the custody of the state?

A. No mam.

Q. You've never seen anything besides these pictures, is that right?

A. No."

It is clear, therefore, that Quinn could say only that the truck found in Holt's possession appeared to be the type of truck that he once possessed since they both looked the same. This evidence is inadequate to convict.

The only other witness who testified about the truck's identification was Officer White who qualified as an expert witness. Officer White testified that a 1974 Ford truck and a 1976 Ford truck look so similar that a casual observer can not tell the difference. He elaborated by stating that an expert would have to examine them to find any differences. Officer White also testified that he found the confidential identification number on Holt's truck to be F15MCC58130 which corresponded to the number on the vehicle originally registered to Earl Quinn and stolen from him in 1979. White produced a photograph of said confidential number which did not disclose where the confidential number was located on the truck. White testified and it is apparent on examination that this photograph does not legibly show the entire con-

fidential number. In fact, the only numbers White could discern by examining the photograph were F15MC, 8 and 1. Notwithstanding, the photograph was admitted into evidence over Appellant's objection. There appears to be no explanation about how the confidential VIN could be determined in its entirety when only seven of its eleven characters were visible in the photograph. Appellant's trial counsel contended that even less than seven characters were discernible; our examination of the exhibit indicates that between five and seven characters can be identified. Officer White further testified that he was present when a representative of the prosecutor's office gave Appellant's trial counsel an opportunity to inspect the truck while still in the custody of the police. The State refused, however, to show him where the confidential number was or to disclose it to him and indicated to him that he was not permitted to see it.

Appellant by counsel attempted at every stage of the proceedings to obtain discovery of the confidential VIN but consistently was refused permission to examine it. Appellant filed a motion to dismiss with the trial court claiming that the State had failed to comply with his discovery motion. His motion to dismiss was denied. He filed a motion asking the trial court to order that he be given an opportunity to inspect the allegedly stolen vehicle to determine its confidential VIN but said motion also was denied. He raised the issue in his motion to correct errors which was denied. Appellant consistently objected to all testimony regarding the confidential VIN and the photograph depicting only parts of said VIN. Appellant therefore more than adequately preserved this issue before the trial court. He now claims that he was denied his Sixth Amendment right to cross-examine all witnesses against him. He specifically contends that he was forced to accept Officer White's testimony as proffered with no opportunity to effectively cross-examine him or to offer independent evidence indicating a different confidential identification number.

The New York Court of Appeals faced this same issue on two separate occasions. *People v. Silver*, (1976) 39 N.Y.2d 99, 346 N.E.2d 811, 382 N.Y.S.2d 972; *People v. Ramistella*, (1954) 306 N.Y. 379, 118 N.E.2d 566. In both cases the New York high court found constitutional error. The language used in *Ramistella* and approved in *Silver* was:

"Of course the insurance companies and the police are free to use such confidential motor numbers in conducting their auto theft investigations. But in a court of justice they either must employ some other method of identifying the stolen car—as indeed they could have confined themselves to in this case—or, if the confidential number is used as evidence against the defendant, they must permit their witnesses to be cross-examined with respect thereto, including its confidential location. A prosecution witness may not have immunity from defendant's fundamental right of cross-examination upon so vital a matter as identification on the ground that his evidence is an impenetrable secret."

*Ramistella*, 306 N.Y. at 384, 118 N.E.2d at 569.

The United States Supreme Court also was faced with a similar issue in *Roviaro v. United States*, (1957) 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. Roviaro was convicted of a narcotics crime after testimony was given by a federal law enforcement agent who overheard and saw part of Roviaro's illegal transaction from the trunk of an informant's car. Although the informant was an active participant in the sale, the government refused to disclose his identity. The Supreme Court recognized the informant's identity privilege as a legitimate means to further and protect the public's interest in law enforcement. Nonetheless, the Court held as follows:

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way [footnote omitted]. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action [footnote omitted].... We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant facts."

*Roviaro*, 353 U.S. at 60, 77 S.Ct. at 628, 1 L.Ed.2d at 645.

An examination of the totality of the evidence in the present case clearly indicates that the balancing of interests is clearly wanting. There is a patent imbalance to Appellant's detriment. We recognize the importance of the confidential identification numbers placed on vehicles for law enforcement purposes. That importance and purpose is not paramount to all others, however, and cannot justify the subversion of an accused's basic constitutional right to have an opportunity to test by cross-examination the probative evidence admitted against him. This case did not have much probative and convicting evidence over and above the confidential VIN as was the case in *United States v. Nasse*, (7th Cir.1970) 432 F.2d 1293, *cert. denied* (1971) 401 U.S. 938, 91 S.Ct. 927, 28 L.Ed.2d 217. This case instead represents a situation where the only convicting evidence was Officer White's testimony that the secret identification number identified the instant vehicle as the vehicle stolen from Quinn. Under such circumstances the State must either give up the confidentiality of its identification number or forego its prosecution of the defendant. It cannot have both.

Appellant Charles Edward Burton is hereby ordered discharged.

GIVAN, C.J., and DeBRULER,· HUNTER and PRENTICE, JJ., concur.