Argued and submitted April 24, 1985, reversed and remanded for new trial
February 12, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# LOUIS DALE BONNER,
*Appellant.*

(74-5097; CA A28425)

714 P2d 245

Helen I. Bloch, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for theft in the first degree. ORS 164.055. He moved in this court for a new trial under ORS 19.130(3), because a portion of the court reporter's notes were destroyed.[1] We reverse and remand for a new trial.

Defendant was charged with theft of an automobile in an indictment returned October 17, 1974. Trial began on Wednesday, March 19, 1975, and recessed on Friday, March 21, for a three-day weekend. On Tuesday, March 25, defendant did not appear, and the court recessed the trial until March 27 so defendant could be located. On that day, defendant did not appear and could not be located. The court determined, after taking evidence, that defendant's failure to appear was wilful and proceeded with the trial in his absence. The jury returned a verdict of guilty, and the court issued a warrant for his arrest. He was not arrested on the warrant until December, 1982, in Canada. He was ultimately returned to Oregon, and sentence was imposed in March, 1983.

After notice of appeal was filed, defendant's appellate counsel discovered that the court reporter who had reported the trial on March 19 and 21, 1975, could not locate her shorthand notes. In a letter to counsel she stated:

> "It was my recollection that boxes of notes that old were destroyed, and in fact my recent searches have verified that that is the case."

Defendant contends that he is entitled to a new trial under ORS 19.130(3):

> "Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes * * *, the judgment appealed from may be reversed and a new trial ordered as justice may require."

In order to obtain a new trial under that statute, a defendant must show that the notes are missing through no fault of his and that he has made every reasonable effort to secure a substitute for the missing portion of the record. He must also

---

[1] Defendant moved for a new trial before filing his brief. We denied the motion. Although we did not expressly state in the order that the motion could be renewed in appellant's brief, that was our intention. Defendant did in fact reiterate the motion in his brief, and the state responded.

make at least a *prima facie* showing of error or unfairness in the trial. *Ethyl Corp. v. Jalbert,* 270 Or 651, 529 P2d 368 (1974); *Hoffart v. Lindquist & Paget Mortg. Co.,* 182 Or 611, 189 P2d 592 (1948); *State v. Williams,* 49 Or App 893, 621 P2d 621 (1980).

In its first response to defendant's motion for a new trial, the state argues:

> "We submit that, after voluntarily absenting himself from the court in the midst of trial, fleeing the jurisdiction, and remaining in hiding for nearly eight years, defendant is not entitled to a new trial under ORS 19.130(3). It cannot fairly be said that he is free from 'fault,' with respect to the circumstances which led to the destruction of the reporter's notes in this case."

Second, the state contends that defendant did not make a sufficient showing of error or unfairness to warrant reversal and a new trial.[2]

■   Regarding the first contention, we note that the court reporter destroyed her notes because she concluded that they were too old. The state's apparent argument is that they were too old because defendant absconded from the jurisdiction, thereby misleading the court reporter into concluding the notes were no longer useful or needed. At the time of trial, ORS 7.120 required that a court reporter's notes be preserved for ten years.[3] Consequently, the reporter had a statutory duty to retain the notes, despite her assumption that they were no longer needed. She did not respond to defendant's absence from the jurisdiction in destroying the notes but to the fact that the notes were "old." There had been a verdict in the case but no final judgment; the case was still active, and there was no basis for the reporter to purge the record. There simply is no causal relationship between defendant's absence and the court reporter's destruction of her notes.

By failing to appear for continuation of the trial,

---

[2] The state makes no contention that defendant did not make a reasonable effort to secure a substitute for the missing portion of the record. We are satisfied that defendant did all that reasonably could have been done in attempting to recreate the missing record.

[3] ORS 7.120 was amended by Or Laws 1975, ch 481, § 1, to require that the notes be retained for 40 years. The present version of ORS 7.120(4) requires retention of notes for 20 years. Or Laws 1979, ch 58, § 1.

defendant faces the possibility of conviction for separate offenses relating to that activity. However, he should not be separately punished by requiring him to proceed with his appeal without a complete transcript. Although it appears that, if granted a new trial, defendant would receive some substantial benefit from his unlawful flight, the dilemma of the missing record is not of his own making. The state judicial system cannot place the responsibility on defendant for the lost record and require him to suffer the consequences of its action. We conclude that the notes were not lost due to any fault of defendant.

■     The state alternatively argues that defendant has not made "at least a *prima facie* showing of error, or unfairness in the trial or that there had been a miscarriage of justice." *See Hoffart v. Lindquist & Paget Mortg. Co., supra; Ethyl Corp. v. Jalbert, supra.* Although there is unfairness in requiring a criminal defendant to proceed with an appeal on an inadequate record, there is also an element of unfairness in granting a new trial and requiring the state to establish defendant's guilt again. This unfairness is especially true in this case, where the extended period of time will make it difficult if not impossible, for the state to reassemble the evidence once produced. In that light, defendant has the burden to establish not only a likelihood that there was error but that it would be a ground for reversal.

Defendant's appellate counsel made an effort to reconstruct the testimony given on the two days for which the transcript is missing. She contacted defendant's trial counsel and the deputy district attorney who prosecuted the case. Neither attorney had sufficient memory to be able to reconstruct the testimony or to make an agreed narrative statement for purposes of appeal. Trial counsel's notes, which he still retained after nine years, disclosed that approximately twenty witnesses testified for the state during March 19 and 21, 1975, and that some of the witnesses testified outside the presence of the jury.

Appellate counsel's reconstruction of the evidence shows that during March 19 and 21 the state presented evidence regarding the automobile theft charged in the indictment and of other automobile thefts and criminal conduct in which defendant was allegedly involved. The state argues that

such evidence would have been properly admitted to show a common scheme or mode of operation which would be probative of defendant's responsibility for the theft charged.

Defendant argues that under the law as it existed in 1975 when he was tried, as well as the present evidence code, OEC 404(3), evidence of prior criminal activity is not admissible except in limited circumstances. *State v. Manrique*, 271 Or 201, 531 P2d 239 (1975). Thus, he contends, he has established that the evidence was *prima facie* inadmissible and that it was prejudicial and reversible error to admit it unless the state can demonstrate application of a recognized exception.

■   Both parties are essentially correct in the abstract. However, the *process* of determining if the evidence is admissible is more important than the statement of a rule. The cases which have dealt with that genre of evidence, *see, e.g., State v. Hockings*, 23 Or App 274, 542 P2d 133 (1975), *rev den* (1976), as well as the statutory evidence rules, OEC 402, 403, require a balancing of the probative value of the evidence against the possibility of unfair prejudice after the evidence is determined to be relevant. The trial court is given a measure of discretion in determining relevancy as well as in deciding whether the requirements of OEC 403 are satisfied. The appellate court may defer in close cases to the trial court's determination of admissibility; however, it cannot abdicate its appellate responsibility by simply deferring to the trial court. In making a *prima facie* showing of reversible error, defendant must show some indication that the evidence is not relevant or if relevant is sufficiently prejudicial that an inquiry into the trial judge's exercise of discretion is justified. Because the record of the testimony, objections and findings of the trial court are not available, defendant must make a showing by affidavit or other documentation of the character of the evidence, the reason proffered for admission and an indication of the unfair prejudice, if any, that would result from admission.

■   From the notes of trial counsel, the affidavit of appellate counsel and the record that is available, it is clear that evidence respecting other possible automobile thefts was a significant part of the evidence presented by the state in connecting defendant to the theft alleged in the indictment. Evidence of criminal activity or bad acts other than those charged have a substantial potential for unfair prejudice by

focusing the jury's attention on criminal activities in which the state suggests defendant was involved without the necessity of proving the suggested crime beyond a reasonable doubt.

We conclude that defendant has made a sufficient showing of reversible error and is entitled to a new trial under ORS 19.130(3).

The issue presented by defendant's second assignment of error is whether the trial court erred in refusing to permit him to cross-examine a police detective concerning the locations of the confidential vehicle identification numbers (VIN) on the car defendant allegedly stole in this case and another car he allegedly stole.[4] The record is sufficient to review that claim of error. We will address that issue, because it is likely to arise again on retrial.

The state's theory in this case was that defendant was involved in the "salvage auto racket," which it described in a trial memorandum:

"This is one of the oldest and was the most popular M.O. employed in North America. The thief acquires legal possession of a late model automobile which has been demolished or burned. He may purchase it from a wrecking yard operator, an insurance company, or the owner. After transferring the wrecked vehicle, he will remove the VIN plate, license plates and registration and dispose of the vehicle as scrap metal. His next step is to steal an identical vehicle. After removing the identification from the stolen car, he will replace it with the VIN and license plates acquired from the salvage. In order to do a thorough change of identification, especially on the newer models, the thief will also restamp the engine and transmission numbers to conform with whatever identification that particular manufacturer uses. The VIN and license plates removed from the stolen car are destroyed. The stolen vehicle has now taken the identity of the legally registered salvage. The most difficult hurdle the thief must overcome in this transfer of identification is the removal and reattachment of the VIN plate. On newer vehicles, the plate is secured by

---

[4] Vehicles contain confidential VINs placed in a secret location by the manufacturer. They also contain visible VINs found in such locations as the dashboard or door panel. Although there is some correlation between the confidential and visible VINs, they are not identical. The location of the confidential VIN is known only to the manufacturer and the National Auto Theft Bureau. It may be disclosed, as in this case, to police bureaus attempting to identify stolen vehicles.

steel rosette rivets which he cannot obtain on the market. He must then resort to the use of 'pop' rivets or other means of attaching the plate. Careful examination of the VIN plate and the means whereby it is secured is the first step in the examination of a suspect vehicle.

"There are variations of the salvage racket and the investigator must be aware of these. For example, the thief will rebuild the salvage vehicle by repairing it with parts removed from the stolen car. This eliminates the need for transferring the VIN. Another method is to remove the door post or dashboard bearing the VIN from the salvage unit and install it in the stolen vehicle. This is called 'sectioning'. When this is done the VIN plate is not disturbed and therefore bears no evidence of being tampered with."

Defendant was charged with the theft of a 1969 Mustang. The missing transcript makes it difficult to piece together the evidence. Apparently, the state attempted to prove that, after he stole the car from one Hinkley, he replaced its visible VIN plates and license plates with those from a salvaged similar model Mustang which was properly registered to him. He then traded the stolen car to a car dealer for a used car. The car dealer then sold the stolen car to a third party, Henry. Defendant then stole the car from Henry. He removed the counterfeit VIN plates, replaced the license plates, but not the original visible VIN plates, and returned the car to a location near the Hinkley residence, where an anonymous phone caller told Hinkley it could be found.

Hinkley identified the car as the one stolen from her, but she noted that the seats and headrests had been changed. Because of some unique scratches and marks, Henry identified the car as the one he purchased. His car keys fit the locks on the car. Police detective Kilday testified that he examined the confidential VIN on the car and discovered that it matched the serial number on Hinkley's car registration. On cross-examination, the trial judge sustained the state's objections to defendant's questions concerning the location of the confidential VIN.

Part of the "other crimes" evidence introduced concerned defendant's involvement in the theft of a 1972 Pinto. Kilday had placed a salvaged, brown, 1972 Pinto under surveillance. He had observed defendant remove parts from the vehicle and then tow it to a wrecking yard, where Kilday later

examined it. He discovered that the visible VINs were missing, and he made a tape lift of the confidential VIN. Sometime later defendant was arrested in a white 1972 Pinto bearing the license plates from the salvaged brown Pinto. The visible VINs on the white Pinto matched the confidential VIN from the salvaged, brown Pinto. On cross-examination defendant again asked Kilday the location of the confidential VIN, and the trial judge again sustained the state's objection.

■    Defendant argues that he was denied his rights of confrontation and compulsory process under both the state and federal constitutions. There is no merit to the compulsory process claim, because Kilday testified at trial. The state replies that the locations of the confidential VINs were not material to defendant's defense.

A somewhat analogous situation was presented in *State v. Elliott*, 276 Or 99, 553 P2d 1058 (1976), where the issue was whether the state was required to produce at trial the confidential informant who had arranged a sale of narcotics by the defendant to an undercover police officer. In deciding that it was not, the Supreme Court balanced the defendant's interest in making a defense against the state's interest in protecting its informants:

> "The State asserts it sent [the informant] out of the state to remove him from the danger of being killed as the result of his having been involved in other narcotic cases and that it had the privilege of not producing him. The issue is whether the privilege was extended to the State under the then present circumstances. The privilege involved is that of the government's [sic] to protect persons who furnish information of violations of the law to officers charged with the enforcement of that law. The purpose of the privilege is the furtherance and protection of the public's interest in effective law enforcement. The flow of information is dependent upon the protection of those who inform. *Roviaro v. United States*, 353 US 53, 59, 77 S Ct 623, 1 L Ed 2d 639 (1957). Known and available informants are not known for their longevity.

> "No fixed rule with respect to production is justifiable. The problem is one which calls for a balancing of the public's interest in protecting the flow of information against the individual's right to make his defense. Whether a proper balance renders as error the failure to require production depends upon the particular circumstances of each case, taking into consideration the crime charged, the possible

defenses, the possible significance of the informant's testimony, and other relevant factors. Where production of the informant has been shown to be essential to a fair determination of a defendant's guilt or innocence, the privilege must give way. *Roviaro v. United States, supra* at 60-62; *State v. Cortman,* 251 Or 566, 574, 446 P2d 681 (1968) [, *cert den* 394 US 951 (1969)]." 276 Or at 102.

Some courts have expressly used that type of a case-by-case balancing test. *See, e.g., Burton v. State,* 462 NE2d 207 (Ind 1984); *People v. Brown,* 126 Mich App 282, 336 NW2d 908 (1983). Others have implicitly balanced the competing interests and have required that defendant show that the location of the confidential VIN is material to his defense before disclosure is required. *See, e.g., United States v. Simmons,* 457 F2d 763 (9th Cir 1972); *United States v. Briddle,* 430 F2d 1335 (8th Cir 1970); *Gurleski v. United States,* 405 F2d 253 (5th Cir 1968), *cert den* 395 US 981 (1969). The New York Court of Appeals has held that if the prosecution relies on proof of the confidential VIN, the defendant must be allowed to cross-examine the witness concerning its location. *People v. Silver,* 39 NY2d 99, 382 NYS2d 972, 346 NE2d 811 (1976); *People v. Ramistella,* 306 NY 379, 118 NE2d 566 (1954).

Rather than adopt a fixed rule intended to cover all cases, the more logical approach is in each case to weigh the defendant's right to make a defense against the state's interest in maintaining the secrecy of the location of confidential VINs in order to preserve their utility in solving car thefts.

■ Defendant argues that his right to cross-examine is preeminent:

"Under the constitutional balancing test set forth by *Roviaro* and *Elliott,* defendant should also have prevailed. Detective Kilday's testimony was the state's primary method of linking defendant to the stolen automobiles. Kilday did not take photos of the vehicle identification numbers he observed, nor did he have other witnesses view the numbers to ensure their accuracy. The only way for the defendant to have challenged his testimony therefore, was through the independent examination of the automobiles. This he could not do so long as the location of the identification numbers were [*sic*] kept secret." (Footnote omitted.)

His argument suggests that defense counsel's reason for cross-examining Kilday was to discover how one could determine

the location of the confidential VIN to check the accuracy of the testimony rather than to use the locations themselves to impeach Kilday. The record contains no discovery motion to inspect the numbers, and the question of whether such a motion should have been granted, had it been made, is quite different from the question before us. Defendant has not demonstrated that whether the confidential VINs were in one place versus another would have been of any value whatsoever in impeaching Kilday. Under the narrow circumstances presented, the trial court did not err in sustaining the state's objections.

Reversed and remanded for a new trial.