Argued and submitted August 19, 1987, affirmed March 22, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# DONNA LEE KENNEDY,
*Appellant.*

## (M-816216; CA A43332)

771 P2d 281

Zack M. Lorts, Oregon City, argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant was charged with failure to perform the duties of a driver involved in an accident, ORS 811.700, and driving under the influence of intoxicants. ORS 813.010. A jury acquitted her of the first charge but found her guilty of DUII. She assigns error to the trial court's admission of certain statements that she made to the police, to its failure to take judicial notice of facts that she requested and to the court's instruction of the jury. We affirm.

On the evening of October 19, 1984, a woman reported to Officer Berry that her vehicle had been struck by a small orange and white car. Berry was familiar with three vehicles in the vicinity that matched the description given by the woman. When he could not find the first car, he went to defendant's home, where he located her orange and white Pinto parked on the street. He examined the car and saw a dent and a fresh grey paint transfer on the right front bumper. A second officer, Kahut, arrived at the scene to provide backup assistance and, soon after that, defendant came out of her house. Both officers testified that she staggered as she approached them, her eyes were watery and her speech was slurred. The officers testified that she smelled strongly of alcohol and that, in their opinion, she was under the influence of intoxicating liquor. Berry advised defendant of her rights, which she indicated that she understood. In response to Berry's questions, defendant stated that she had just driven home from the Portsmouth Club, which is a local bar. Neither officer questioned defendant about whether she had had anything to drink at the club. Defendant was placed under arrest. A third officer, Lindsey, also spoke with her and again advised her of her rights, which she again indicated that she understood. Lindsey testified that defendant told him that she had had several alcoholic drinks at the Portsmouth Club and had driven home. He observed that she was having difficulties with her balance, her eyes were bloodshot and watery and she was talking loudly and quickly. He testified that she failed to recite the alphabet correctly and refused to take the breath test.

Defendant suffers from manic depression and takes Eskalith, a form of lithium carbonate, to treat her illness. During her manic episodes, she is subject to hyperactivity,

slurred and often incoherent speech, problems with her balance and bloodshot and watery eyes. In that condition, she can also be hostile and uncooperative. Additionally, Eskalith produces an odor on her breath which is like alcohol, in particular, gin. Defendant's manic episodes are linked to her blood and medication levels. On the day in question, she took her prescribed dosage of Eskalith. She stated that she was feeling normal, although her mind was "running a little fast." Her mother testified that she spoke with defendant several times that day and that she sounded a "little hyper" and she thought that her daughter should increase her medication. At trial, defendant admitted to having driven home before the officers' arrival but denied having drunk any alcohol except for a sip of wine. A witness who had spent much of the afternoon with her testified similarly. Defendant denied that she had been offered an opportunity to take a breath test.

■     On appeal, defendant argues that the trial court erred in admitting the statements attributed to her by Berry and Kahut, because the state did not establish that the statements were freely and voluntarily made, that she was advised of her constitutional rights and that she knowingly and intelligently waived those rights. Defendant contends that the statements were critical to the state's case, because they tended to prove that she was driving the vehicle that was involved in the accident. Whether the statements provide evidence that defendant was driving the vehicle involved in the hit and run is irrelevant, because she was acquitted of that charge. Regardless of whether the statements provide evidence of driving for purposes of the DUII conviction, there was other evidence that she had been driving. Lindsey testified twice without objection that defendant told him that she had had several drinks at the Portsmouth Club and had driven home from there.[1] Defendant also testified that she had driven earlier that evening. Because there was substantial evidence establishing that defendant had driven, exclusive of her statements to Berry and Kahut, we conclude that any error in admitting those statements was unlikely to have changed the

---

[1] Although defendant preserved her objection to Berry's and Kahut's testimony regarding her statements, she did not object to Lindsey's testimony. Defendant's statements to Lindsey were separate and distinct in time and place from the statements made to Berry and Kahut, and there was no continuing objection to the admission of all of her statements.

result of the trial and that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705, *rev den* 386 US 987 (1967); *State v. Stilling,* 285 Or 293, 304, 590 P2d 1223, *cert den sub nom Stilling v. Oregon,* 444 US 880 (1979); *see also State v. Hansen,* 304 Or 169, 743 P2d 157 (1987).

Defendant next argues that the trial court erred in failing to take judicial notice of particular facts, as she requested. Pursuant to her request, the trial court did take judicial notice of several facts identified in the Physician's Desk Reference (PDR) regarding Eskalith. The court judicially noticed and instructed the jury that the drug is a derivative of lithium carbonate and that it is prescribed in the treatment of manic depression. The court refused, however, to take judicial notice of and instruct the jury regarding the various symptoms of manic depression, the behavioral effects produced by the toxicity of serum lithium levels outlined in PDR and the fact that it is administered in 300 mg capsules.

OEC 201(b) governs facts that can be judicially noticed:

"A judicially noticed fact *must* be one not subject to reasonable dispute in that it is * * *:

"* * * * *

"(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." (Emphasis supplied.)

Defendant contends that the "facts" that she requested be judicially noticed are capable of accurate and ready determination in PDR. One fact of which she argues the court should have taken judicial notice is the capsule size by which Eskalith is administered. We agree that that was a fact that the court could properly have judicially noticed. It is capable of accurate and ready determination. The state, in fact, stipulated that PDR is generally relied on in the medical community and did not challenge its accuracy regarding that fact. However, failure to take notice of that fact was harmless. *See State v. Hansen, supra* 304 Or at 180-84.

Defendant also requested that the court take judicial notice from PDR of the symptoms of manic depression and of the behavioral effects of lithium. The state did not agree that

the accuracy of PDR could not be questioned regarding those facts, as they related to defendant, and objected to the court's taking judicial notice on the ground that expert testimony is required to establish the facts relating to defendant.[2] We agree that PDR is not a resource that is beyond question regarding generalizations pertaining to the symptoms of manic depression or the behavioral effects produced by the toxicity of serum lithium levels for particular individuals. *See State v. Wagner,* 63 Or App 204, 662 P2d 799 (1983). Those matters involve issues that require expert testimony.

Defendant also argues that the trial court erred in failing to instruct the jury that it must accept as conclusive facts that the court judicially noticed. We need not decide, however, whether OEC 201(g) requires that a jury be instructed that facts judicially noticed in favor of the defense are conclusive because, even assuming that such an instruction was required, any error in failing to give the instruction was harmless. The court took judicial notice of the fact that Eskalith is a derivative of lithium carbonate and that it is prescribed in the treatment of manic depression. Additionally, as previously discussed, the court should also have taken judicial notice that Eskalith comes in particular capsule sizes. Those facts, without more, are not probative of any relevant issue in this case and, consequently, the trial court's failure to instruct the jury that they are conclusive was harmless error. *See State v. Hansen, supra.*

Defendant's final argument is that the trial court erred in giving an instruction pursuant to *State v. Miles,* 8 Or App 189, 196, 492 P2d 497, *rev den* (1972). The state contends, however, that defendant failed to except properly to the instruction in the trial court and cannot now raise the issue on appeal. In order to preserve an objection to a jury instruction for appeal, an exception stating the particular grounds for the exception must be taken immediately after the court instructs the jury. ORCP 59(H); ORS 136.330(2). In response to the court's inquiry in this case, defendant excepted to the *Miles* instruction, stating, "Your Honor, I already gave [my objections], your Honor, but it was a failure to give the instruction for weaker and less satisfactory evidence, and it was giving the

---

[2] The state also objected to this evidence on the ground of relevancy.

*Miles* instruction, about susceptibility that we object to." Defendant argues that that exception was sufficient because, during a previous discussion with the court regarding jury instructions, she had specifically detailed her reasons for excepting to the *Miles* instruction. We have held that an exception is sufficient if, after reviewing the exception in the context of the trial and the particular language objected to, we can conclude "that the trial judge was given a sufficient explanation of the substance of [the] objection." *Mariman v. Hultberg,* 82 Or App 535, 539, 728 P2d 919 (1986).

We are unable to review whether the trial court was sufficiently apprised of the grounds for exception in this case, because there is no record of the discussion that defendant refers to on the audio tape. The discussion apparently occurred when the trial court summoned both counsel to the bench to discuss the instructions. Apparently, defendant's counsel believed that the discussion was on the record and relied on that belief when, in his later argument to the court on the instructions, he did not specify in detail the reasons for his exceptions.

ORS 19.130 provides a procedure to deal with a situation such as this, if a party's argument on appeal is dependent on a portion of the record that has not been preserved. ORS 19.130(3) provides:

> "Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes or audio records, or of the exhibits or other matter necessary to the prosecution of the appeal, the judgment appealed from may be reversed and a new trial ordered as justice may require."

Defendant has not requested a reversal under that statute but, even if she had, she has not satisfied its requirements. In order to obtain relief under the provision, an appellant must show that every reasonable effort to secure a substitute for the missing portion of the record has been made. For example, the missing record could be established by agreement of counsel. *Ethyl Corp. v. Jalbert,* 270 Or 651, 529 P2d 368 (1974); *State v. Bonner,* 77 Or App 572, 714 P2d 245 (1986). There is no indication here that any effort has been made to obtain a substitute for the missing portion of the record. Without the specific arguments that defendant asserts were made in the

portion of the trial that was not recorded, the alleged error relating to the instruction was not preserved.

Affirmed.