Argued and submitted May 25, affirmed August 9, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GARY LEE WALDRUP,
Defendant-Appellant.

Malheur County Circuit Court
17CR06187; A176798

536 P3d 20

Defendant was convicted by a jury of driving under the influence of intoxicants, ORS 813.011. Defendant appeals his conviction, contending that the trial court committed plain error when it instructed the jury that it could consider whether defendant was in such a physical condition that he was more susceptible to the influence of intoxicants, *i.e.*, the Miles instruction. *Held*: The trial court did not plainly err when it provided the jury with the Miles instruction. The Court of Appeals previously observed in *State v. Avila*, 318 Or App 284, 507 P3d 704 (2022), that the Miles instruction would be appropriate in a case where a defendant's physical condition was the result of "drugs or medication." The Miles instruction was also supported by the evidence, because the state presented ample evidence about the influences that defendant was under and how defendant's ingestion of controlled substances made him more susceptible to the influence of alcohol.

Affirmed.

Lung S. Hung, Judge.

Sarah M. De La Cruz, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals his conviction for driving under the influence of intoxicants. He raises two assignments of error on appeal. We summarily reject defendant's second assignment of error, regarding failure to strike a statement made by the prosecutor during closing argument, because we conclude that defendant failed to preserve that claim of error and any error is not plain. As to the first assignment of error, defendant argues that the trial court committed plain error when it instructed the jury that it could consider whether defendant was in such "a physical condition" that he was more susceptible to the influence of intoxicants, *i.e.*, the *Miles* instruction. In defendant's view, the court's error was two-fold: First, the jury instruction is plainly erroneous under a recent decision of this court and, second, even if the substance of the instruction itself is not plain error, the instruction was unsupported by the evidence and was likely to confuse the jury. We conclude that the court did not plainly err, and we therefore affirm.

We begin by summarizing the evidence relevant to the giving of the instruction. Trooper Marvin testified that he stopped defendant after observing him driving without a front license plate. When he contacted defendant, Marvin could smell alcohol and noticed that defendant was "very fidgety," his eyelids were droopy and eyes glassy and bloodshot, and his pupils were constricted. Defendant was also speaking very quickly, "licking his lips and opening and closing his mouth really quickly, almost uncontrollably." Defendant admitted to drinking one beer, but Marvin did not think that defendant's behaviors were consistent with having consumed one beer. Defendant later said he had two beers. Defendant also admitted to having smoked marijuana, although his descriptions as to how recently he had done so varied throughout the course of his conversation with Marvin.

Defendant agreed to perform field sobriety tests. Marvin asked whether defendant had any medical conditions, and defendant explained that he had a back issue that made him feel like he had "a migraine all over his body, 24/7, or something to that effect." Defendant said that he took

prescription drugs but had not taken any for two to three days.[1] Defendant's performance on the field sobriety tests was mixed, and Marvin ultimately arrested defendant for driving under the influence of intoxicants. During a search of defendant's car, Marvin discovered a case of beer, as well as a baggie of marijuana and a marijuana cigarette.

After defendant's arrest, Marvin administered a breath test. That test showed that defendant had a .04 percent blood alcohol content. That result did not, in Marvin's view, account for all of defendant's symptoms, so he collected a urine sample from defendant. That urine sample was positive for methamphetamine, its metabolite amphetamine, and nine carboxy tetrahydrocannabinol, the relevant metabolite of the psycho-active component of marijuana.

Another officer, Mills, conducted a drug recognition expert (DRE) evaluation on defendant. He observed that defendant had poor coordination, mumbled speech, and bloodshot and glassy eyes. He also noted that defendant's "behavior was very cyclic. Sometimes [defendant] was very angry or agitated, and then there'd be other times that he would be laughing and joking[.]" During the evaluation, Mills observed signs of both a central nervous system stimulant and a narcotic analgesic. Mills believed that some of defendant's behavior was consistent with methamphetamine use, although defendant denied ever having used that drug. Mills ultimately concluded that defendant was under the influence of a combination of alcohol, marijuana, a central nervous system stimulant, and a narcotic analgesic.

The state charged defendant with driving under the influence of alcohol and/or controlled substances. *See* ORS 813.010(2) (if the state intends to rely on a theory that a defendant's impairment was caused in part or in whole by a controlled substance, the state must plead that theory in the indictment).

During defendant's trial, in closing argument, the state contended that defendant's use of drugs made him more susceptible to the influence of alcohol. Although the state also made several references to defendant's back condition,

---

[1]  Defendant later said he had not taken pain medication in the past week.

the state's focus was on the combination of intoxicants that defendant had consumed and distinguished the impairment caused by his back condition from that caused by the intoxicants. In fact, the state argued that defendant's back pain had "nothing to do with 90% of the signs of impairment" that the officers observed.

At the close of trial, the trial court instructed the jury based on Uniform Criminal Jury Instruction 2708. That instruction provides that the jury can consider whether a defendant has a physical condition that renders them more susceptible to the influence of intoxicants:

> "If you find from the evidence that the defendant was in such a physical condition that the defendant was more susceptible to the influence of intoxicants than the defendant would have otherwise been, and as a result of being in that physical condition the defendant became under the influence by a lesser quantity of intoxicants than it would otherwise take, the defendant is nevertheless under the influence of intoxicants."

That instruction is commonly referred to as the *Miles* instruction, based on *State v. Miles*, 8 Or App 189, 196-97, 492 P2d 497, *rev den* (1972). *See State v. Avila*, 318 Or App 284, 286, 507 P3d 704 (2022) (so stating).

Defendant assigns error to the giving of that *Miles* instruction. Defendant did not object to the giving of the instruction below but argues that it is plain error. More specifically, he argues that our recent decision in *Avila*—in which we addressed the genesis and ongoing propriety of the *Miles* instruction—renders the instruction in this case plainly erroneous. He argues that, in *Avila*, we distinguished between circumstances in which a defendant's condition is caused by controlled substances and circumstances in which a defendant's condition is caused by "medication"—by which we understand him to mean medicines that are not controlled substances—and that our reasoning in *Avila* means that the instruction is an incorrect statement of the law any time a defendant's physical condition is not caused by "medication." He alternatively argues that the trial court erred in giving the instruction because it was, when viewed in light of other instructions given, likely to confuse the jury,

inasmuch as the jury could have believed that the "physical condition" referred to in the *Miles* instruction referred to defendant's back injury, and not controlled substances. As explained below, we disagree.

Because *Avila* forms the basis for defendant's arguments on appeal here, we discuss it in some detail. There, the state charged the defendant with driving under the influence. *Avila*, 318 Or App at 286-87. At trial, the defendant testified that he suffered from muscular dystrophy and that it was that condition, not alcohol, that caused the symptoms that he exhibited when police stopped him while driving. *Id.* at 287. An expert testified about the impact on one's motor skills from a combination of alcohol use and muscular dystrophy, explaining that alcohol use would make someone with the disease have an "even harder time." *Id.* at 287-89. Over the defendant's objection, the trial court gave a *Miles* instruction. *Id.* at 289.

The defendant appealed, and we reversed. *Id.* at 305. A critical question in the case was what the *Miles* instruction means when it uses the term "physical condition"— namely, whether it applies to a "'physical condition' beyond one created by drugs or medications that make a defendant more susceptible to the influence of alcohol." *Id.* at 286. We thus explored to what extent the instruction had been used in prior case law outside the specific context of "the combined use of drugs and alcohol." *Id.* at 293. We noted that the cases that we relied upon in our *Miles* decision all involved combined effects of alcohol and other drugs or chemicals, and indeed, *Miles* itself involved a combined use of pills and liquor. *Id.* at 293-95. Additionally, post-*Miles*, we regularly upheld the giving of the instruction in cases in the "narrow context of drugs and alcohol," and, concomitantly, we consistently reversed the giving of the instruction in cases that involved "'physical conditions' other than drugs." *Id.* at 295-99.

From that survey, we observed in *Avila* that we had "never once held that a defendant's 'physical condition' *other than* having taken drugs or medication supports the giving" of the *Miles* instruction. *Id.* at 301 (emphasis added). We expressed "grave doubts" that the instruction would ever

be appropriate when the "'physical condition' is something other than a temporary condition caused by the ingestion of a drug, and especially where the physical condition is a permanent physical impairment." *Id.* That is because Oregon law "does not make it a crime for a physically impaired person to drive a vehicle"; instead, Oregon's law criminalizes driving "when a person's physical or mental faculties have been adversely affected by the use of an intoxicant to a perceptible degree." *Id.* And that physical impairment "must be the result of the intoxication, not the result of a preexisting condition that is noticeable apart from the use of an intoxicant." *Id.*

From there, we reached our dispositive point, namely, that our cases have required evidence "of a condition that makes the defendant more susceptible to the influence of the intoxicants, not evidence of a condition that results in a greater degree of impairment than would be experienced by a person without that condition." *Id.* at 302. Yet the evidence in *Avila*—while showing that someone with muscular dystrophy may be "more physically impaired overall than an intoxicated person" without that condition—did not include any evidence that the defendant's muscular dystrophy made him more susceptible to being adversely affected by alcohol. *Id.* at 302. Thus, the trial court erred in giving the *Miles* instruction. *Id.* at 304-05.

Relying on *Avila*, defendant here asserts that the trial court erred in giving the *Miles* instruction. His argument is, as we understand it, twofold: (1) in *Avila*, we "limited the application of a *Miles* instruction to only cases that involve the ingestion of medication[,]" as opposed to controlled substances, and, thus, the instruction was an incorrect statement of law in this case, where the evidence showed that defendant had ingested controlled substances, and (2) the *Miles* instruction was not supported by the evidence and was likely to confuse the jury. Defendant acknowledges that his argument on appeal is unpreserved and, therefore, asks us to review for plain error and to exercise our discretion to correct plain error.

As to defendant's first point—that *Avila* limited application of the *Miles* instruction to instances in which the

defendant ingested medication, not controlled substances, and, thus, the instruction was error—we disagree that any error is plain. As just described, in *Avila*, although we called into question the instruction in the context of a permanent physical condition like the one the defendant in *Avila* had, we did not question use of the instruction when the "physical condition" is caused by medication or controlled substances. That is because the appropriateness of the instruction in the context of a permanent physical condition was the issue before us in *Avila*: We were focused on whether the *Miles* instruction was appropriate in the context of an individual who has a permanent physical condition; the defendant did not assert that the instruction was improper when a defendant's physical condition is the result of ingestion of controlled substances and/or medication.

Yet, at the same time, we repeatedly observed in *Avila* that the *Miles* instruction would be appropriate in a case where a defendant's physical condition was the result of "drugs *or* medication," while simultaneously expressing doubts about the propriety of the instruction "outside the context of drugs or medications" that made the defendant more susceptible to the influence of alcohol.[2] *E.g.*, *Avila*, 318 Or at 286, 293, 301. We used "drugs" to refer to controlled substances, as set apart from other prescription or over-the-counter medication, as is evident in light of our discussion of a statutory change that required the *Miles* instruction to more specifically state that "intoxicants" includes "either or both intoxicating liquor and controlled substances." *Avila*, 318 Or App at 296 n 4 (quoting *State v. McFeron*, 166 Or App 110, 117 n 2, 999 P2d 470 (2000)).

To be sure, as defendant observes, some of the cases we discussed in *Avila* involved the combined use of medication (prescription) and alcohol. *E.g.*, *State v. Kennedy*,

---

[2] We did note that we had previously held that, if the state had not charged the defendant with DUII based on a combination of alcohol and controlled substances, *see* ORS 813.010(2), "it is improper to instruct the jury under *Miles* that the taking of controlled substances is a 'physical condition' that materially increased a defendant's susceptibility to the alcohol." *State v. McFeron*, 166 Or App 110, 118, 999 P2d 470 (2000); *Avila*, 318 Or App at 296-97 (summarizing the holding of *McFeron*). As noted above, in this case, defendant was charged with driving under the influence of a combination of alcohol and/or a controlled substances.

95 Or App 663, 665, 771 P2d 281 (1989) (combined use of medication and alcohol). And yet in other places, we simply referred to the combined influence of "drugs," which could be read to include either medication or controlled substances, or both. *Avila*, 318 Or App at 299. But in the context of the question that we were required to answer in *Avila*, and, in light of the repeated references to drugs/controlled substances and medications, we cannot say that defendant's legal point— that *Avila* limits the *Miles* instruction to impairment caused by medication, not controlled substances—is "obvious, not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

We also disagree with defendant's alternative argument—that the trial court committed plain error— because the evidence in this case did not support a *Miles* instruction and the instruction was likely to confuse the jury. Defendant asserts that the record is devoid of evidence that defendant's physical condition made him more susceptible to the effects of an intoxicant. That argument, as we understand it, is built upon two alternate premises: the first, that defendant's medical conditions did not provide a factual basis to give the *Miles* instruction because the state did not present evidence that "a person with defendant's medical conditions would be more susceptible to the effects of an intoxicant," and the second that *Miles* "applies only to drugs (medicine) that are not controlled substances."

We have already explained above why defendant's second premise is not viable, at least in the plain error context. As to the first, as the state observes, the evidence in the case did support the instruction based on a physical condition caused by controlled substances that made him more susceptible to the effects of alcohol; the state presented ample evidence from the officers and experts about the influences that defendant was under and how defendant's ingestion of controlled substances made him more susceptible to the influence of alcohol. We cannot say that it was plain error to give an instruction that was supported by the state's theory of the case and the evidence presented. *See State v. Williamson*, 214 Or App 281, 285, 164 P3d 315, *rev den*, 343 Or 554 (2007) (a party "is entitled to a jury instruction on

its theory of the case if the requested instruction correctly states the law, is based on the operative pleadings, and is supported by the evidence").

Lastly, we reject defendant's contention that the trial court committed plain error because the *Miles* instruction was likely to confuse the jury. In defendant's view, given other instructions that permitted the jury to consider the combined effect of controlled substances and alcohol in determining whether defendant was under the influence, it would understand the *Miles* instruction's use of "physical condition" to mean that it could also consider whether defendant had a physical condition (*i.e.*, his back injury) that made him susceptible to being under the influence. On this record, particularly given the state's focus on defendant's use of drugs and alcohol and defendant's increased susceptibility to the influence of one given the other, we cannot say that the jury would necessarily so infer. In this context, if defendant was concerned about how the jury might construe the instruction *vis à vis* defendant's medical condition, it was incumbent upon him to ask for a limiting instruction or otherwise seek to clarify the instruction.

Affirmed.