Argued July 9, affirmed October 23, petition for rehearing denied
November 13, 1968, United States Supreme Court denied
certiorari April 1, 1969

## STATE OF OREGON, *Respondent, v.*
## D. C. CORTMAN, *Appellant.*

446 P. 2d 681

*Morton A. Winkel,* Portland, argued the cause and filed briefs for appellant.

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and RODMAN, Justices.

GOODWIN, J.

Defendant appeals from a conviction of illegal possession of heroin. The primary issue concerns the reception into evidence of the contraband drug.

Defendant asserts three grounds for the exclusion of the evidence: (1) the search warrant which the officers had obtained before entering the defendant's apartment did not sufficiently describe the premises to be searched; (2) the officers did not comply with the so-called "knock and announce law," ORS 133.290;[1] and (3) after the search the officers did not comply with ORS 141.130 which requires officers executing a search warrant to "forthwith return the warrant to the magistrate and deliver to him a written inventory of the property taken * * *."

The record reveals that a police officer received a telephone call from an informer who claimed to have observed heroin in the defendant's apartment. The officer, who had some personal knowledge of the defendant's activities and knew his location within the apartment building, went to the magistrate and obtained a warrant. The warrant identified the apartment only by street number and by the name of the occupant. The defendant claims that the warrant was fatally defective because it did not also designate his apartment by its number within the building.

■ While both the state and federal constitutions require that a search warrant particularly describe the place to be searched, the courts, with few exceptions, have held that a description is sufficient if it permits the officer executing the warrant to locate with rea-

---

[1] ORS 133.290 "The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

sonable effort the premises to be searched. See, e.g., *People v. Estrada,* 234 Cal App 2d 136, 44 Cal Rptr 165, 171-172, 11 ALR3d 1307, 1316-1317 (1965); *Martin v. United States,* 99 F2d 236 (10th Cir 1938); *United States v. Pisano,* 191 F Supp 861 (SD NY 1961); *United States v. Joseph,* 174 F Supp 539 (ED Pa 1959).

■ The purpose of the particular-description requirement is to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search. When the warrant designates the premises by means that will properly limit the search, there is little risk that other premises will be subjected to unreasonable examination. The defendant cites cases holding searches illegal under warrants authorizing searches in premises designated only by the street number of a multiple-unit apartment building. But none of these cases involve a warrant containing the name of the occupant whose rooms were to be searched, and they offer the defendant no support. See, e.g., *Siverson v. Olson,* 149 Or 323, 40 P2d 65 (1935), and cases cited in the Annotation, 11 ALR3d 1330, 1333-1334 (1967). In *Smith v. McDuffee,* 72 Or 276, 283-284, 142 P 558, 143 P 929 (1914), we held that a description in a warrant was sufficient if, with the instrument before him, "a surveyor, either with or without the aid of extrinsic evidence, could locate the premises with reasonable certainty." This language, if it ever had any utility in defining the constitutional requirements of a warrant, appears to have outlived its usefulness and should be overruled. The relevant inquiry is whether a police officer can execute the warrant without straying into premises which he has no authority to enter.

We hold that the warrant employed in the case at bar sufficiently described the premises to be searched.

On the issue of compliance with Oregon's "knock and announce" law, one of the officers who executed the warrant testified:

"A * * * I knocked. I didn't knock real loud, yet I'm sure I knocked loud enough that anyone in the room would have heard it.

"* * * I then said, 'We are police officers. We have a search warrant.' And at this time I could hear the scurrying about inside the room and I knocked again; this time a little bit louder and I got no response. No one seemed to come to the door and at this time Officer Giani and I pushed the door in.

"* * * * *."

■ The United States Supreme Court, under a federal statute similar to ORS 133.290, recently excluded evidence (narcotics) seized by federal agents who knocked but did not announce their identity and purpose before entering a suspect's apartment. *Sabbath v. United States*, 391 US 585, 88 S Ct 1755, 20 L Ed 2d 828 (1968). The purpose of such statutes is to forbid the unannounced intrusion into a dwelling. The reasons underlying the statutes are grounded in practical experience: a police officer entering a house must guard against the possibility that he might be mistaken for someone with no right to be there. See *Sabbath v. United States*, supra.

■■ Where, as here, the court found that the officers made the required announcement, we believe that the purposes of the statute were served and that it would be unrealistic to require the officers to delay their entry for a fixed period of time after making their presence and purpose known. The reasonableness of the officers' delay in a given set of circumstances will depend upon a number of factors, including the

likelihood of destruction of evidence, danger to the officers, or danger to others. See *People v. Maddox*, 46 Cal 2d 301, 306, 294 P2d 6, cert. denied 352 US 858, 77 S Ct 81, 1 L Ed 2d 65 (1956). We hold that the failure of the officers to delay their entry until after the defendant could dispose of the evidence did not constitute a ground for excluding it.

■ Finally, the defendant argues that the search was rendered illegal by the failure of the officers, after the fact, to comply with ORS 141.130. Since the search was conducted under a warrant valid on its face, and since we have held that the search itself was reasonable, a good search was not made bad by the failure of the officers thereafter to make a prompt inventory and return. See *Rose v. United States*, 274 F 245, 250-251 (6th Cir 1921). While the requirement of a prompt return is no doubt a valuable safeguard of the property rights of individuals, these rights can be protected without resort to the automatic invocation of the exclusionary rule. The privacy of the individual, which is protected by the Fourth Amendment, has already been invaded by the time the inventory-and-return statute becomes relevant. The exclusion of trustworthy evidence that has lawfully come into the possession of the government would penalize society without serving a constitutional purpose. We conclude that the motion to suppress was properly overruled, and that the evidence when offered upon trial was properly received.

The defendant has also sought to attack the search warrant used in this case by asserting that, because the officer obtained his information through the services of an informer, the defendant was entitled as a matter of law to confront the informer as a condition precedent to the court's ruling upon the validity of

the warrant. The same proposition was rejected by *McCray v. Illinois*, 386 US 300, 87 S Ct 1056, 18 L Ed 2d 62 (1967). In *McCray*, the search was incident to an arrest and without a warrant, but the question of probable cause involved the same considerations that apply to the issuance of a warrant. The court held that if the officer's sworn testimony revealed that he had probable cause to make the arrest, even though the officer's information was supplied in part by an informer, it was not necessary to force the revelation of the informer's identity.

■■ There is a significant difference between the issue of guilt or innocence, in the trial of which confrontation and cross-examination are constitutionally guaranteed, and the issue of probable cause to arrest or to search. Where the identity of an informer becomes relevant upon the issue of guilt or innocence, as in *Roviaro v. United States*, 353 US 53, 77 S Ct 623, 1 L Ed 2d 639 (1957), the prosecution must elect whether to sacrifice the informer's future utility or to sacrifice the prosecution of the particular case. But where the identity of the informer can be relevant only on the issue of probable cause and the record reveals adequate proof of probable cause without the informer's identity, the defendant has no right to insist upon disclosure. *People v. Flores*, 68 Cal 2d 563, 440 P2d 233, 68 Cal Rptr 161 (1968).

■ Error has been assigned to an instruction to the effect that in a prosecution for violating ORS 474.020 (1) the state need not prove motive. While the instruction was a correct statement of abstract law, it was unnecessary. There was no issue of motive in the case. The defendant was charged with possession of heroin and was arrested with the contraband in his possession. The defense collapsed after the contra-

band was received in evidence. Consequently, no possible prejudice could have resulted from the unfortunate comment on motive. Ordinarily, a trial court should refrain from giving unnecessary instructions, since there are a number of situations in which they can be prejudicial. See, e.g., *State v. Bonner,* 241 Or 404, 406 P2d 160 (1965), where a trial judge indiscriminately read to the jury a series of "boiler plate" instructions on such topics as flight and voluntary intoxication after a trial in which neither element had been mentioned. In the case at bar, the error was wholly innocuous.

Affirmed.

## ON PETITION FOR REHEARING

Morton A. Winkel, Portland, for the petition.

Before Perry, Chief Justice, and McAllister,

Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

## GOODWIN, J.

In a petition for rehearing, the defendant has pointed out an error in our opinion. We treated an assignment of error which challenged the refusal of the trial court to require the state to produce an informer at the time of trial as if the motion had been concerned only with the admissibility of evidence. The record reveals that the defendant's motion was made on the asserted grounds "that this is essential for the conduct of the defense of this case * * *."

While the defendant did not, apparently, make the argument in the trial court, he argues in this court that it was necessary to call the informer to the stand in order to try to prove, by cross-examination, that the informer had "planted" the narcotics in the defendant's room.

The defendant correctly states the abstract proposition that if an informer is a necessary witness to establish a fact helpful to the defendant on the issue of guilt or innocence it is reversible error to refuse a timely motion to produce the informer. There is nothing in the record below, except the defendant's own assertion, to suggest that the informer in the case at bar could have assisted the defendant in proving any fact going to the issue of guilt or innocence.

In *Roviaro v. United States*, 353 US 53, 62, 77 S Ct 623, 1 L Ed 2d 639 (1957), the court said:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's

right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

We hold that in order to predicate error upon the refusal of a court to order the state to produce (and thereby to end the usefulness of) an informer, the party seeking such an order should make some preliminary showing that the informer's testimony would have some bearing upon the issue of guilt or innocence. See *People v. Durazo,* 52 Cal 2d 354, 340 P2d 594, 76 ALR2d 257 (1959). The argument that the informer in the case at bar may have "planted" the narcotics is an argument the defendant is free to make before the jury, whether or not the informer takes the witness stand. The likelihood that an informer would take the stand and admit that he "planted" the state's evidence in order "to frame" the defendant is not, however, so great that we can say that the state had the duty to sacrifice the informer in this case. It must be remembered that in this case the issue was possession, and the state was able to put on its entire case without reference to the informer. See *State v. Penney,* 242 Or 470, 410 P2d 226 (1966). Without some preliminary showing that the defendant's argument is based on more than imagination, the proposition does not provide a reason for requiring the state to disclose the informer's identity.

Rehearing denied.