Argued August 19, reversed and remanded September 10, reconsideration denied October 15, petition for review denied November 12, 1975

STATE OF OREGON, *Appellant, v.* HENRY O. GILL (No. C 74-11-3645 Cr), *Respondent.*

539 P2d 1138

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the

brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Stephen A. Houze,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

The state has appealed, pursuant to ORS 138.060 (1), from an order of the circuit court requiring disclosure of the name of a police informant. Police testified in an in camera hearing preceding trial that an undisclosed informant, previously found to be reliable, told them defendant was in the Hilltop Cafe and had in possession Ritalin, a prohibited dangerous drug. ORS 167.202 et seq., 475.010. That location was one of three known-to-police locations where Ritalin was available in the Portland area. They knew defendant. They had used the informer in a similar role several times, paying him $15 to $20 per arrest for his information. They went to the restaurant, found defendant sitting at a table and upon searching him found in one pocket a vial containing 100 Ritalin tablets and in another pocket, wrapped around with black tape so its contents could not be seen, a vial containing five Ritalin tablets. Ritalin was selling on the street at $4 per tablet.

Defendant filed a notice of intent to rely upon the defense of entrapment. This logically can be interpreted to mean that defendant would claim that the informant had planted the Ritalin upon him. In his testimony defendant stated that he had been in the Hilltop Cafe for quite a few hours, and that he had been drinking whiskey with other people there; then:

"That night I done got pretty loaded, and I

wanted to hear some music. I went back to play records. I guess I got up and got a drink. Later on some friend walked up and patted me on the shoulder. I know him when I see him. He said, 'Hold a package for me. I have to run to the bathroom, and I will be right out.' "

Later in his testimony he stated that his "friend" was a "colored guy." He also testified that there were several other patrons of the restaurant present and that some of them were playing records. He gave no explanation of why he had broken the "package" down to the two vials and had them in different pockets, or why he did not recognize the contents as dangerous drugs, except possibly through his statement that he was "loaded."

The trial court reviewed our decision in *State v. Jessie,* 17 Or App 368, 521 P2d 1323, Sup Ct *review denied* (1974), and the opinion in *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied,* 394 US 951 (1969). In the latter case the Oregon Supreme Court quoted the rule of *Roviaro v. United States,* 353 US 53, 62, 77 S Ct 623, 1 L Ed 2d 639 (1957):

> " 'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " 251 Or at 574-75.

We think the policy of this state is expressed in *Cortman* and in ORS 135.855(1)(b) which makes an exception from our discovery rules for the identity of a confidential informant where "failure to disclose will

not infringe the constitutional rights of the defendant * * *."

■ Obviously, where the defense is entrapment, if the defendant is truly entrapped by having the evidence planted upon him either by the informant or by somebody else to the informant's knowledge, the informant's testimony would be of primary importance to the defendant. This is the basis upon which the trial judge reasoned in concluding that the identity of the informant must be revealed. It is also true that, if the simple assertion by a defendant that he was entrapped by an informant's planting the evidence on him is sufficient to require the revelation of the name of undisclosed informers, then the use of informers as a source* of information for curtailing drug traffic will quickly come to an end. The policy of this state would thus be thwarted.

■ In our view the cases which we have reviewed, including those cited above, require a closer weighing of the defendant's testimony—in consonance with the rule of *Roviaro*—than was done here. One glaring failure of the defendant's case for revelation is that the defendant himself stated there were other people he knew present in the restaurant. Obviously, someone worked and managed there. All of the action occurred in an area 10 by about 20 feet in size, and the door to the restroom was in that area, so others present must almost necessarily have seen what occurred. Defendant produced none of them as witnesses, despite the burden being on him in the in camera hearing. No one testified that any "colored guy" used the restroom and left or remained. We hold as a matter of law, under the policy of this state and under the facts of this case, that there was insufficient evidence to support the court's order. *See* ORS 135.855 and *State v. Cortman,* supra. *See also United States*

*v. Hodges,* 493 F2d 11, 12 (5th Cir 1974),① and *State v. Taylor,* 508 SW2d 506 (Mo Ct App 1974).

Reversed and remanded.

---

① In United States v. Hodges, cited in text, defendant's counsel raised the question of entrapment in a case similar to this in appellate argument. The court said:

"*⸱ * * Entrapment is an affirmative defense, in the sense that there is an initial burden of going forward upon the defendant. [Citations omitted.] Since defendant, by hypothesis, knew whatever, if anything, the informer had said or done to entrap him, *he cannot plead ignorance or inability to supply the missing substantiation.* We see no infirmity, constitutional or otherwise, in requiring him to do so * * *." (Emphasis supplied.)