Argued August 19, affirmed September 22, 1975

STATE OF OREGON, *Respondent, v.* JOHN
DAVID BRAUN (No. C 74-09-2701), *Appellant.*

540 P2d 1029

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief were Morrow & McCrea, P.C., and Robin B. Orahood, Eugene.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

Upon trial by jury defendant was convicted of criminal activity in drugs. ORS 167.207. On appeal he contends that: (1) the drugs which were the basis of the conviction should have been suppressed because they were seized pursuant to a search warrant which was based upon an affidavit containing a false statement of material fact; (2) the trial judge erred in refusing to require the state to produce a police informant at trial for interrogation by defendant; and (3) the trial judge erred in failing to grant a mistrial when the state produced evidence that, after he was arrested, defendant asked that an attorney be contacted for him.

The affidavit which was the basis of the warrant to search the defendant, his motel room, and his automobile read in part:

"That on September 3rd, 1974 I was in contact with a confidential and reliable informant who in the past has given Officer Marley and myself a considerable amount of information regarding persons dealing in the illicit trafficking of narcotics in the Portland metropolitan area. That on several of these instances related to me by this informant, the information was of such a nature that the informant had no idea that I knew this information beforehand to be true. Further, that said informant has caused for information to be given to me that will lead to the arrest of one (1) person after said information is presented to the Multnomah County Grand Jury. Further, that this informant has, at my direction, purchased for me a quantity of amphetamine sulfate which I caused to be analyzed by technicians of the Portland Police Crime Lab and the results of this was that the suspected amphetamine was in fact, amphetamine sulfate;

"That my informant informed me that within the past 48 hours my informant has been in Room #203 of the Cosmo Air-tel located at 6221 NE 82nd Street, County of Multnomah and State of Oregon. That my informant informed me that the occupant of this room is a subject known only to my informant as BRAUN. That while in Room #203 of the Cosmo Air-tel my informant did observe said John Doe also known as BRAUN in possession of Crosstops. That my informant further observed in a Ford Motor Vehicle, California UAF-510 an additional quantity of amphetamine tablets. Further, That I know from my experience as a Narcotics Officer that 'Cross-tops' is the street name for amphetamine sulfate, a narcotic drug;

"That on September 3rd, 1974 I did go to the Cosmo Air-tel located at 6221 NE 82nd Avenue, because my informant was of the opinion that said

John DOE also known as BRAUN was going to leave. That I did go to the manager of the Cosmo Air-tel and was informed by that person that a person whose last name was BRAUN was registered in Room #203 of the said motel. Further, said manager did inform me that this subject BRAUN also had a vehicle registered to him, a Ford, California UAF-510 and that car was parked in front of the motel. That further, the manager reported that BRAUN had requested the motel personnel to wake him in the early morning;

"* * * * *."

■ At the hearing on the motion to suppress, no evidence was introduced contrary to the allegations in the affidavit, with one exception—the officer who had executed the affidavit testified that it was the informant rather than a motel employe who had informed him that the automobile was shown by the motel register as belonging to the defendant. Under *State v. Hughes,* 20 Or App 493, 532 P2d 818, 821 (1975), the question is whether the issuing "magistrate, relying only on the accurate parts of the affidavit and diregarding the inaccurate parts, [could] have independently determined there was probable cause to search * * *."

The affidavit contained an uncontroverted statement that the reliable informant had, within 48 hours of the time the warrant was issued and served, personally observed illegal drugs in the automobile. That information in itself was sufficient to support the issuance of the warrant to search the vehicle. ORS 133.545(3) provides:

"The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that such things are *in the places,*

or in the possession of the individuals, *to be searched* \* \* \*." (Emphasis supplied.)

■ We turn now to the second assignment of error—the defendant's attempt to have the informant produced for interrogation. The evidence produced at trial was that three police officers had found the keys to the automobile described in the warrant in defendant's possession, opened the trunk of the automobile and found the drugs. The defendant argues that he is entitled to have the informant produced for examination to support his theory that the drugs were "planted." *State v. Cortman,* 251 Or 566, 446 P2d 681, *cert denied* 394 US 951 (1969), holds that in Oregon something other than a fertile imagination is necessary to require production of an informant.

"We hold that in order to predicate error upon the refusal of a court to order the state to produce (and thereby to end the usefulness of) an informer, the party seeking such an order should make some preliminary showing that the informer's testimony would have some bearing upon the issue of guilt or innocence \* \* \*. The argument that the informer in the case at bar may have 'planted' the narcotics is an argument the defendant is free to make before the jury, whether or not the informer takes the witness stand. The likelihood that an informer would take the stand and admit that he 'planted' the state's evidence in order 'to frame' the defendant is not, however, so great that we can say that the state had the duty to sacrifice the informer in this case. It must be remembered that in this case the issue was possession, and the state was able to put on its entire case without reference to the informer \* \* \*. Without some preliminary showing that the defendant's argument is based on more than imagination, the proposition does not provide a reason for requiring the state to disclose the informer's identity." 251 Or at 575.

*See also, State v. Jessie,* 17 Or App 368, 521 P2d 1323, Sup Ct *review denied* (1974) ; *State v. Gill,* 22 Or App 484, 539 P2d 1138 (1975).

█ The remaining assignment of error does not warrant extended discussion. After he was arrested, the defendant used the telephone in the presence of one of the officers to call his wife. Over objection, the officer was permitted to testify that defendant asked his wife to contact an attorney for him. Assuming that the objection should have been sustained on the grounds of relevancy, there is nothing in the record or in the briefs by way of reference to expert opinion or empirical data which indicates that jurors generally consider the desire of an arrested person for an attorney as evidence of guilt. Only error which is prejudicial will warrant reversal of a judgment. *State v. Christensen,* 3 Or App 442, 446-47, 474 P2d 782, 784 (1970). *See also,* ORS 138.230. In any event after the police officer had given this testimony, the trial judge told the jurors that it was not relevant and they should ignore it.

Affirmed.