Argued and submitted March 11, decision of Court of Appeals reversed and cases remanded to Court of Appeals for further proceedings August 14, 2003
See 190 Or App 130 (2003)

STATE OF OREGON,
*Petitioner on Review,*

*v.*

CRAIG DONALD TRAX,
*Respondent on Review.*

STATE OF OREGON,
*Petitioner on Review,*

*v.*

LISA MARIE TRAX,
*Respondent on Review.*

(CC 97CR2980FA, 97CR2980FB;
CA A105215 (Control), A105216; SC S49484)

75 P3d 440

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Senior Deputy Public Defender, Salem, argued the cause for respondents on review. With her on the brief was Peter A. Ozanne, Executive Director, Oregon Public Defense Services.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.

CARSON, C. J.

**CARSON, C. J.**

The issue in these consolidated criminal cases is whether a search warrant that purported to authorize a search of defendants' residence contained sufficient particularity to satisfy Article I, section 9, of the Oregon Constitution. The trial court held that the warrant met constitutional requirements, denied defendants' motions to suppress evidence found as a result of execution of the warrant, and found defendants guilty of multiple drug-related crimes. The Court of Appeals reversed the trial court's denial of defendants' motions to suppress and defendants' convictions. *State v. Trax*, 179 Or App 193, 39 P3d 887 (2002). We allowed review and now reverse the decision of the Court of Appeals.

We take the following facts from the trial court record. On November 19, 1997, Detective Admire of the Douglas County Sheriff's Office learned that, while in a house on Cary Street in Winston, a person named Lisa had shown methamphetamine for sale to a confidential informant. On the basis of the informant's description, Admire located the house, noted its address of 111 Cary Street, and observed a Ford Ranger parked in the front and a Subaru parked in the driveway. Admire ran checks on both vehicles through the Driver and Motor Vehicle Services Branch (DMV),[1] and learned that the Ford Ranger was registered to Craig and Lisa Trax (defendants) and the Subaru was registered to Kathleen Brown. All three vehicle owners had listed their addresses with the DMV as 111 Cary Street in Winston.

Admire further learned that, in October 1996, Detective Fetsch of the Douglas County Sheriff's Office had conducted a consent search involving Brown at 111 Cary Street. During that search, Fetsch had discovered two growing marijuana plants. Through the course of investigating the informant's tip regarding Lisa Trax, Admire spoke to Fetsch regarding Fetsch's earlier consent search involving Brown.

---

[1] At the time of the factual events that gave rise to this case, the Oregon Administrative Rules referred to the agency known as the DMV as the "Driver and Motor Vehicle Services Branch" of the Oregon Department of Transportation. That agency now is named the "Driver and Motor Vehicle Services Division." OAR 735-010-0008(11).

On November 21, 1997, Admire submitted an affidavit to the Douglas County Circuit Court, which set out the information summarized above, and obtained a search warrant. Among other things, the warrant authorized police to search (1) "[t]he residence and property located at 111 Cary Street in the City of Winston, Douglas County, Oregon"; (2) the persons of defendants; (3) the person of Brown; (4) the Ford Ranger belonging to defendants; and (5) the Subaru belonging to Brown. Admire's affidavit was attached to the warrant.

Later that day, Admire, Fetsch, and three other members of the Douglas County Sheriff's Office[2] arrived at 111 Cary Street to execute the warrant. Admire knocked on the front door, and Craig Trax answered. Admire told Trax that he had information that drugs were being sold on the premises and requested consent to search, which Trax refused. Admire then showed Trax the warrant and entered the house.

Upon entry, Admire discovered that the house in fact was divided into two separate residences with separate interior entrances—one residence consisting of the first floor, with an interior entry door near the front door, and the other residence consisting of the second floor, with an upstairs interior entry door. Admire and Fetsch then entered the first-floor residence, which belonged to defendants.[3] Lisa Trax arrived shortly thereafter, and both defendants were read their *Miranda* rights. The ensuing search of defendants' residence resulted in the discovery and seizure of two marijuana

---

[2] Another detective, a sergeant, and a property evidence staff person accompanied Admire and Fetsch. For ease of reference, we refer to the group executing the warrant as "the police" throughout this opinion.

[3] All parties argued the case as if the police had learned from Craig Trax—either through questioning or a voluntary statement on his part—that he lived in the first-floor residence. The record does not disclose any information regarding such an exchange; however, the record does disclose, and the trial court found, that the police learned from Craig Trax that "another" residence was located on the second floor of the house at 111 Cary Street. From that fact, together with the other facts surrounding the search, it is reasonable to infer that the police also learned from Craig Trax that he lived in the first-floor residence. *See generally State v. Wilson*, 323 Or 498, 510-11, 918 P2d 826 (1996), *cert den*, 519 US 1065 (1997) (in reviewing trial court's preliminary factual finding on evidentiary issue, court drew from record all reasonable inferences that trial court could have made supporting its ruling).

plants and paraphernalia associated with growing and distributing marijuana.

While Admire was inside defendants' first-floor residence, another officer went upstairs to the second-floor residence, which belonged to Brown, to see if he could obtain consent to search. Brown was not home, and the police did not search her residence.

On the basis of the evidence discovered during the search of the Trax residence and vehicle, a grand jury indicted defendants for manufacture and delivery of a controlled substance, ORS 475.992(1)(a), and manufacture and delivery of a controlled substance within 1,000 feet of a school, ORS 475.999(1). Defendants moved to suppress the evidence resulting from the search, upon the ground that neither Admire's affidavit nor the warrant itself had described the house at 111 Cary Street as a multi-unit dwelling.[4] At a hearing on defendants' motions, Craig Trax testified about the nature of the separate residences at 111 Cary Street, as well as about a brief interaction that he had had with Fetsch during the 1996 consent search of Brown's residence. Admire, for his part, testified about discovering the two separate residences upon entering the front door at 111 Cary Street when executing the warrant. Admire further testified that, despite Fetsch being present in the house in 1996, Fetsch never had mentioned to Admire that the house consisted of two separate residences and that Fetsch's report from that search also had not noted that fact.

The trial court denied defendants' motions to suppress, reasoning that (1) upon discovering that the house contained two residences, Admire permissibly had employed reasonable effort in determining that the first-floor residence, which the police ultimately searched, belonged to defendants; and (2) defendants had not met their burden of proving that Admire had been aware, through knowledge that Fetsch had gained during his 1996 search of Brown's residence, that the house at 111 Cary Street consisted of two

---

[4] Defendants simultaneously filed motions to controvert, challenging the reliability of the confidential informant. The trial court denied those motions, and the Court of Appeals did not address that ruling, in light of its reversal of defendants' convictions based upon their motions to suppress.

separate residences. The court thereafter convicted defendants, based upon stipulated facts, of all charges.

Defendants appealed, and a divided, en banc Court of Appeals reversed their convictions. The majority concluded that the warrant was unconstitutionally overbroad, in violation of Article I, section 9, specifically reasoning as follows: (1) the warrant itself authorized the search of only one residence; (2) the warrant contained no "tie-breaking" information that permitted the police to determine which of the two residences within the house at 111 Cary Street was the intended object of the search; and (3) because no such tie-breaking information existed, the police constitutionally could not execute the warrant, and any search pursuant to it was illegal under Article I, section 9. *Trax*, 179 Or App at 210-12. Four judges dissented, concluding that, despite the unanticipated discovery of two separate residences at 111 Cary Street, the warrant, together with the supporting affidavit, authorized the search of both defendants' residence and Brown's residence. *Id.* at 214, 217-18 (Deits, C. J., dissenting). As noted, we allowed the state's petition for review and, for the reasons explained below, now reverse the decision of the Court of Appeals.

Article I, section 9, provides, in part:

"* * * [N]o warrant shall issue but upon probable cause, supported by oath, or affirmation, *and particularly describing the place to be searched*, and the person or thing to be seized."

(Emphasis added.) As this court explained in *State v. Cortman*, 251 Or 566, 569, 446 P2d 681 (1968), *cert den*, 394 US 951 (1969), the purpose of the "particularity" requirement is

"to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search. When the warrant designates the premises by means that will properly limit the search, there is little risk that other premises will be subjected to unreasonable examination."

*See also State v. Blackburn/Barber*, 266 Or 28, 34, 511 P2d 331 (1973) (if warrant describes premises so as to make invasion of privacy interests possible without probable cause, then warrant too broad and constitutionally defective). A description in a warrant of the place to be searched satisfies the particularity requirement if it permits the executing officer "to locate with reasonable effort the premises to be searched." *Cortman*, 251 Or at 568-69; *see also Blackburn/Barber*, 266 Or at 35 (to same effect).

As they contended below, defendants first argue on review that the house at 111 Cary Street in fact contained two separate residences and that, to satisfy the particularity requirement of Article I, section 9, the warrant must have identified that fact and specified which residence within the house was to be searched. In defendants' view, the warrant provided no basis to search any *particular* residence within the house, and, upon discovering two separate residences, the police were not entitled to rely upon any personal knowledge respecting which residence to search. As noted, the Court of Appeals majority generally agreed with defendants, specifically relying upon this court's decisions in *Siverson v. Olson*, 149 Or 323, 40 P2d 65 (1935), *Blackburn/Barber*, 266 Or 28, and *State v. Devine*, 307 Or 341, 768 P2d 913 (1989).

Defendants are correct that a description in the warrant that the house at 111 Cary Street contained two residences would have made the warrant more particularized respecting the place to be searched. However, the inclusion of such a description was not necessary, under the facts of this case, to satisfy the particularity requirement of Article I, section 9, as discussed below.

As noted above, in *Cortman*, 251 Or at 568-69, this court explained that a description in a warrant is constitutionally sufficient if it permits the executing officer to locate, with "reasonable effort," the premises intended to be searched. In that case, the officer had obtained and executed a warrant that had named the defendant and had identified his apartment building by street number, but had not specified an apartment number; however, the officer had known in which apartment the defendant resided. *Id.* at 568. This court concluded that the warrant was not fatally defective

under the particularity requirement, reasoning that the officer had been able to execute the warrant "without straying into premises which he ha[d] no authority to enter." *Id.* at 569. In reaching that conclusion, the court distinguished other cases involving invalid warrants describing only the street number of multi-unit apartment buildings, reasoning that none of those cases had involved a warrant naming the occupant of the place to be searched. *Id.*

Here, as in *Cortman*, the warrant listed the street address of what turned out to be a multi-unit dwelling and also named defendants as persons to be searched. Upon discovering that the house contained two separate residences, the police permissibly used reasonable effort—by obtaining information from Craig Trax upon arrival[5]—to ascertain which residence within the house belonged to defendants and then searched only that residence. As in *Cortman*, then, the police had been able to execute the warrant "without straying into premises which [they] ha[d] no authority to enter." 251 Or at 569. It follows that, as written, the warrant sufficiently "narrow[ed] the scope of the search to those premises for which a magistrate ha[d] found probable cause to authorize the search," *id.*, and, therefore, did not violate the particularity requirement of Article I, section 9.[6]

The foregoing discussion disposes, for the most part, of defendants' argument respecting any alleged particularity defect in the warrant. As noted, however, in concluding that the warrant was constitutionally defective, the majority

---

[5] Nothing in the record, and nothing in the parties' arguments, suggests that the exchange between the police and Craig Trax implicated any constitutional protections respecting interactions between the police and the citizenry. *See* 335 Or at 600 n 3 (discussing contents of record).

[6] Defendants also emphasize on review that, although the police had learned upon entry into 111 Cary Street that Craig Trax lived in the first-floor residence, they had not learned necessarily that Lisa Trax—the only person mentioned in the affidavit as having attempted to sell methamphetamine to the informant—also lived in the first-floor residence, at least not until her arrival after the police already had begun searching that residence. Although it is debatable whether defendants preserved any legal issue relating to that point, we note that the fact that the warrant stated that defendants were registered co-owners of a vehicle listed at 111 Cary Street, and that they had the same last name, provided sufficient information for the police reasonably to conclude that defendants lived in the same residence.

opinion of the Court of Appeals relied upon this court's decisions in *Siverson, Blackburn/Barber,* and *Devine.* Because that discussion provided the centerpiece of the majority's opinion, we take this opportunity to clarify the holdings of those cases, particularly as they apply here.

*Siverson* involved a warrant that described the place to be searched as "a certain building" located at a particular address, but did not name any person to be searched. In executing the warrant, the police discovered that the house at the listed address actually contained two separate residences on different floors, each occupied by two people, and a separate garage apartment occupied by a fifth person. Notwithstanding that discovery, the police searched the entire house and the garage apartment. 149 Or at 324-25, 328. This court held that, under the facts of the case, the description in the warrant was insufficient under Article I, section 9. *Id.* at 328. The court specifically distinguished an earlier case, *State v. Quartier,* 114 Or 657, 667, 236 P 746 (1925), concerning a warrant that had involved only one building containing a single residence at the listed address and that expressly had named the persons who were the target of the search. *Siverson,* 149 Or at 328.

In *Blackburn/Barber,* the warrant at issue described the place to be searched as "Apartment Number 2" in a residence at a particular address, with the letters "ECURB" on the door. Although the warrant did not name a person to be searched, the police knew the occupant's name to be Barber. When the police executed the warrant, they searched apartments numbered as 2 and 3 at the listed address, as well as an additional, unnumbered apartment in which they had found Barber. More than one hour into execution, the police noticed that the letters "ECURB" were posted above the door of the unnumbered apartment in which they found Barber, but not above the door of Apartment 2, as stated in the warrant. 266 Or at 30-33.

After discussing the purpose of the particularity requirement, the court in *Blackburn/Barber* explained:

"The description [in the warrant] must be sufficiently clear so that the property to be searched is recognizable from

other neighboring properties. If, however, a warrant pur-
porting to authorize a search is sufficiently ambiguous that
it is impossible to identify with a reasonable degree of cer-
tainty the particular premises authorized to be searched,[7]
the warrant may not be executed and any search pursuant
to it is illegal, whether of the premises actually intended or
not, because of the danger that the privacy of unauthorized
premises will be invaded."

*Id.* at 35 (footnote omitted). The court then held that the war-
rant at issue authorized the search of the apartment with the
letters "ECURB" on the door, reasoning that the "ECURB"
description in the warrant was sufficiently particularized to
allow the officers to ascertain with reasonable certainty that
that apartment was the intended object of the search. 266 Or
at 35. By contrast, the warrant did not authorize the search
of Apartment 2, without the letters "ECURB" on the door (or,
in any event, Apartment 3). *Id.* at 36.

Having concluded that the officers properly executed
the warrant respecting the "ECURB" apartment, but not
respecting Apartment 2, the court stated:

"[T]he fact that [the police] were acting unauthorizedly in
searching other premises should not invalidate an author-
ized search of the premises intended."

*Id.* Accordingly, the court reversed the trial court's order sup-
pressing evidence discovered in the "ECURB" apartment, but
affirmed as to evidence discovered in Apartment 2. *Id.*

---

[7] We note that, in *Cortman*, 251 Or at 569, decided nearly five years before
*Blackburn/Barber*, this court had retreated from the "reasonable certainty"
approach:

"In *Smith v. McDuffee*, 72 Or 276, 283-284, 142 P 558, 143 P 929 (1914), we held
that a description in a warrant was sufficient if, with the instrument before
him, 'a surveyor, either with or without the aid of extrinsic evidence, could
locate the premises with reasonable certainty.' This language, if it ever had
any utility in defining the constitutional requirements of a warrant, appears to
have outlived its usefulness and should be overruled. The relevant inquiry is
whether a police officer can execute the warrant without straying into prem-
ises which he has no authority to enter."

Nonetheless, in *Blackburn/Barber*, 266 Or at 35, the court again utilized the
"reasonable certainty" wording from *Smith. See also State v. Ingram*, 313 Or 139,
144-45, 831 P2d 674 (1992) (quoting and applying that wording from *Blackburn/
Barber* in context of construing statutory particularity requirement); *State v. Reid*,
319 Or 65, 70-71, 872 P2d 416 (1994) (applying *Ingram*).

In *Devine*, the warrant at issue described the place to be searched as a white and black, single-story dwelling at 442 W. Centennial, but did not name any person to be searched. After searching the dwelling pursuant to the warrant, the police discovered a living area in an unattached white garage behind the dwelling, marked as 442-1/2. The police then searched the garage area and found contraband. 307 Or at 343.

After setting out the purpose of the particularity requirement, this court stated:

> "* * * [O]fficers may search only a single residence in a multiple-residence building or property if the warrant described only one such residence. *State v. Blackburn / Barber*, 266 Or [at] 35-37 * * *; *see also Siverson* * * *, 149 Or 323[.]
>
> "Although never explicitly stated, *Blackburn / Barber* and *Siverson* imply that[,] if a warrant does not state how many residences may be searched, the warrant only authorizes the search of one residence."

*Devine*, 307 Or at 344. The court went on hold that, under Article I, section 9,

> "a warrant for the search of certain premises applies only to those premises[,] and * * * if, at some time during the search, separate premises are encountered and searched, the search of the latter is unauthorized without regard to whether the officers could have anticipated ahead of time that they would encounter those separate premises."

*Id.* at 346; *see also id.* at 345 ("A warrant authorizes the search of a particular place. That authorization does not extend to other places, even when they are somewhat like the place whose search is authorized and their existence was not anticipated by the officers."). The court ultimately determined that it was unable to ascertain from the record whether the separate garage area in fact constituted a separate living space and remanded for further findings in that regard. *Id.* at 346-47.

As noted above, the Court of Appeals majority construed *Siverson, Blackburn / Barber,* and *Devine* collectively to stand for the following propositions:

"(1)   Unless otherwise specified, a warrant to search a residence at a specific address authorizes the search of only one residence at that address. * * * (2) If a warrant authorizes the search of a residence at a specific address but the officers executing the warrant discover more than one residence at that address, the officers may look to other identifying information contained in the warrant to discern which is the residence that is the proper subject of the search. * * * (3) However, if it is not possible to tell from the warrant with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and *any* search pursuant to it is illegal, whether of the premises actually intended or not[.]"

*Trax,* 179 Or App at 208-09 (emphasis and brackets in original; footnotes and internal quotation marks omitted). The foregoing quotation is accurate as a general matter, as demonstrated by *Siverson,* 149 Or 323, wherein this court invalidated a warrant that had purported to be for a single residence, but had contained no "tie-breaking" information to distinguish among the three residences that the police had encountered upon execution. Simply stated, upon discovery of multiple residences at the listed address, the police in *Siverson* had been unable to determine—from either the face of the warrant itself or through "reasonable effort" in conjunction with the warrant, *Cortman,* 251 Or at 268-69— which of those residences had been the intended object of the search.

By contrast, neither *Blackburn/Barber* nor *Devine* involved a situation in which the warrant had purported to describe only one residence that, in fact, consisted of multiple residences. In *Blackburn/Barber,* the warrant indisputably had authorized the search of only one residence; the question was *which* residence (Apartment 2 or the "ECURB" apartment) had been the intended object of the search. There, and again in contrast to *Siverson,* this court concluded that the police *could* have determined with reasonable certainty, from the face of the warrant, that they were authorized to search the "ECURB" apartment. Similarly, in *Devine,* the warrant clearly had authorized the search of the residence marked 442 W. Centennial; the question there was whether that description had encompassed the separate garage apartment marked as 442-1/2. Ultimately, then, and unlike the facts at

issue here, those cases involved scenarios in which the police had searched areas *beyond* those particularly described in the warrant (*Blackburn/Barber*) or possibly had done so (*Devine*).

As to any ambiguity respecting the place to be searched, the Court of Appeals majority correctly set out this court's explanation from *Blackburn/Barber*, 266 Or at 36, that, if an executing officer reasonably can determine from the face of the warrant which of potentially multiple residences the officer is authorized to search, then the particularity requirement is satisfied respecting the intended premises (although any search of premises not encompassed by the warrant would be illegal). *Trax*, 179 Or App at 202-03. However, the Court of Appeals did not consider the additional direction from *Cortman*, 251 Or at 568-69, discussed earlier, that a description in a warrant is sufficient "if it permits the [executing] officer * * * to locate with 'reasonable effort' the premises to be searched."[8]

It follows from the foregoing understanding of the case law that, respecting this particular warrant, the Court of Appeals took out of context the statement from *Devine*, 307 Or at 344, that "officers may search only a single residence in a multiple-residence building or property if the warrant

---

[8] *Cortman* and the cases cited and relied upon therein demonstrate that the phrase "reasonable effort," 251 Or at 568-69, refers to *minimal* police effort in conjunction with the warrant, as opposed to extensive effort, to ascertain which of unanticipated multiple residences is the intended object of the search (or to ascertain otherwise the specific location of the intended premises). *Compare Siverson,* 149 Or at 328 (because warrant did not name person to be searched, police could not determine with reasonable effort which of multiple residences was intended to be searched); and *Smith,* 72 Or at 282-84 (court invalidated warrant that did not describe property to be searched; no minimal reasonable effort could have assisted police); *with Cortman,* 251 Or at 568-69 (officer permissibly utilized personal knowledge, independent of wording in warrant, concerning location of defendant's apartment within multi-unit building, rendering warrant sufficiently particularized); *United States v. Pisano,* 191 F Supp 861, 863 (SDNY 1961) (warrant listed address as "129 W. 3rd," instead of "109 W. 3rd"; police permissibly used reasonable effort to locate intended premises, consisting in part of personal knowledge of its correct location, rendering warrant sufficient under Fourth Amendment); and *People v. Estrada,* 234 Cal App 2d 136, 144-49, 44 Cal Rptr 165, 170-74 (1965) (warrant named defendant and listed address of multi-unit building; police searched only defendant's apartment after learning its precise location from defendant; court concluded that description sufficient under state and federal constitutions because executing officers could identify intended premises "without confusion or excessive effort").

described only one such residence." That statement has no application here, where (1) the warrant set out the address of 111 Cary Street; (2) the warrant specifically named defendants; and (3) the police, by permissibly employing reasonable effort (that is, by obtaining information from Craig Trax), were able to ascertain the location of defendants' residence within the house particularly described. In sum, in the context of the reasonable effort undertaken upon execution, the warrant indisputably authorized the search of defendants' first-floor residence within the house at 111 Cary Street, notwithstanding the wording in the warrant respecting the singular "residence" at that address.

Defendants also rely upon the fact that Fetsch had searched Brown's residence in 1996 to support their contention that, to pass constitutional muster under the particularity requirement, the warrant issued in 1997 must have described the house at 111 Cary Street as a multi-unit dwelling. Before the trial court, defendants essentially argued that, in light of Fetsch's 1996 search and his subsequent presence during the 1997 search pursuant to the warrant at issue, the police in fact must have known, before executing that warrant, that the house consisted of two residences. On review, defendants refine that argument, contending that the court must impute any knowledge in Fetsch's behalf (respecting the multi-unit character of the house flowing from his 1996 search) to Admire (respecting the 1997 search), regardless of whether Admire actually had learned of that fact from Fetsch before obtaining the warrant in question.

Our earlier discussion demonstrates that either variation of defendants' argument misses the mark. As we have discussed, using information set out in the warrant (specifically, the address of 111 Cary Street and defendants' names as persons to be searched), coupled with reasonable effort upon entry, the police were able to ascertain the location of the premises intended to be searched. The fact that Fetsch's earlier knowledge from his 1996 search of Brown's residence might have enabled the police to draft a *more* particularized warrant—setting out the multi-unit character of the house—does not affect our earlier conclusion that the warrant was sufficiently particularized to satisfy Article I, section 9.

■ Defendants next contend on review that, regardless of the fact that the warrant also named Brown as a person to be searched, Admire's affidavit did not establish probable cause to search Brown or her residence. It follows, defendants argue, that the warrant was invalid as to the entire house at 111 Cary Street because it was not supported by probable cause respecting Brown. In making that argument, defendants focus upon the Court of Appeals majority's preliminary conclusion that no probable cause existed to search Brown's residence. *Trax*, 179 Or App at 199-200. However, the state contends—and we agree—that defendants did not preserve any argument respecting the probable cause requirement under Article I, section 9, as to Brown.[9] The Court of Appeals majority therefore should not have discussed the issue, and we decline to address it further.

■ Defendants finally argue on review that the warrant did not satisfy the particularity requirement set out in the Fourth Amendment to the United States Constitution. However, because defendants did not make any federal constitutional argument in that regard to the trial court, we do not address that argument.

As noted above, in conjunction with their motions to suppress, defendants also filed motions to controvert that challenged the reliability of Admire's confidential informant. The Court of Appeals did not address that issue on appeal, in light of its reversal of defendants' convictions based upon the motion to suppress. We therefore remand the consolidated cases to the Court of Appeals for consideration of defendants' arguments respecting their motions to controvert.

The decision of the Court of Appeals is reversed, and the cases are remanded to the Court of Appeals for further proceedings.

---

[9] After reviewing the record, we agree with the Court of Appeals dissent's conclusion respecting defendants' failure to preserve that argument or to raise it on appeal. 179 Or App at 213-14, 214 n 1 (Deits, C. J., dissenting).